IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BIG LAGOON RANCHERIA, a Federally Recognized Indian Tribe,

    Plaintiff,

  v.

STATE OF CALIFORNIA,

    Defendant.
                                      /

No. C 09-1471 CW

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

    Defendant State of California moves for judgment on the pleadings, asserting that it is entitled to Eleventh Amendment sovereign immunity from Plaintiff Big Lagoon Rancheria's claim for bad faith negotiation under the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701-2721.  Big Lagoon opposes the motion, arguing that California has waived its sovereign immunity pursuant to statute or, alternatively, as part of an earlier settlement agreement with Big Lagoon.  The matter was heard on June 25, 2009.  Having considered oral argument and all of the papers submitted by the parties, the Court denies the motion.

BACKGROUND

I.   IGRA

IGRA sets out a statutory framework for the operation and regulation of gaming by Indian tribes. See 25 U.S.C. § 2702. IGRA provides that Indian tribes may conduct certain gaming activities only if authorized pursuant to a valid compact between the tribe and the state in which the gaming activities take place. See id. § 2710(d)(1)(C).

IGRA prescribes the process by which the state and the Indian tribe are to negotiate a gaming compact:

> Any Indian tribe having jurisdiction over the Indian lands upon which a class III gaming activity is being conducted, or is to be conducted, shall request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal-State compact governing the conduct of gaming activities. Upon receiving such a request, the State shall negotiate with the Indian tribe in good faith to enter into such a compact.

Id. § 2710(d)(3)(A); see also Rumsey Indian Rancheria of Wintun Indians v. Wilson, 64 F.3d 1250, 1256-58 (9th Cir. 1994), amended on denial of reh'g by 99 F.3d 321 (9th Cir. 1996). IGRA provides that a gaming compact may include provisions relating to:

> (i) the application of the criminal and civil laws and regulations of the Indian tribe or the State that are directly related to, and necessary for, the licensing and regulation of such activity;
>
> (ii) the allocation of criminal and civil jurisdiction between the State and the Indian tribe necessary for the enforcement of such laws and regulations;
>
> (iii) the assessment by the State of such activities in such amounts as are necessary to defray the costs of regulating such activity;
>
> (iv) taxation by the Indian tribe of such activity in amounts comparable to amounts assessed by the State for comparable activities;

```
            (v) remedies for breach of contract;

            (vi) standards for the operation of such activity and
            maintenance of the gaming facility, including licensing;
            and

            (vii) any other subjects that are directly related to the
            operation of gaming activities.
```

Id. § 2710(d)(3)(C).

If a state fails to negotiate in good faith, the Indian tribe may, after a 180-day period beginning on the date on which the Indian tribe asked the state to enter into negotiations, bring a lawsuit in federal district court. See id. § 2710(d)(7)(A)(i). In such an action, the tribe must first show that no tribal-state compact has been entered into and that the state failed to respond in good faith to the tribe's request to negotiate. See id. § 2710(d)(7)(B)(ii). Assuming the tribe makes this prima facie showing, IGRA provides that the "burden of proof" then shifts to the state to prove that it did in fact negotiate in good faith. See id. If the district court concludes that the state failed to negotiate in good faith, it must order the state and the tribe to conclude a compact within a 60-day period. Id. § 2710(d)(7)(B)(iii). If no compact is entered into within the next sixty days, the tribe and the state must then each submit to a court-appointed mediator a proposed compact that represents their last best offer. See id. § 2710(d)(7)(B)(iv). The mediator will choose the proposed compact that "best comports with the terms of [IGRA] and any other applicable Federal law and with the findings and order of the court." See id. If, within the next sixty days, the State does not consent to the compact selected by the mediator, the mediator will notify the Secretary of the Interior, who will

3

then prescribe the procedures under which class III gaming may be conducted. See id. § 2710(d)(7)(B)(vii).

II. The Dispute Between the Parties[1]

The tribe and the State have been engaged in compact negotiations since the fall of 1993. The tribe filed a lawsuit under IGRA in 1999, alleging that the State had refused to negotiate in good faith. In August, 2005, the tribe reached an agreement with the governor's office on the terms of a compact that would permit it to partner with another tribe to build a casino in Barstow, California. Big Lagoon and the State entered into a settlement agreement, pursuant to which the parties agreed to execute the compact within sixty days. Although the settlement agreement does not refer to any action on the part of the California legislature, legislative ratification was required by law for the compact to take effect.

Paragraph 16 of the settlement agreement provides:

> Each of the persons signing this Agreement represents that he or she has written authority to execute this Agreement on behalf of the entity for which he or she is signing this Agreement. This Agreement shall enure to the benefit of and be binding upon the parties and their respective successors and assigns. The Tribal signatory's authority to waive the Tribe's sovereign immunity is set forth in Exhibit C to the Stipulation for Entry of Judgment (Exhibit III to this Agreement). <u>The State has waived its sovereign immunity by virtue of the provisions of Government Code section 98005.</u>

Def.'s Req. for Judicial Notice Ex. F ¶ 16 (emphasis added).

Paragraph 19 of the agreement states:

> The State and the Tribe agree that should any of the

---

[1] The following facts are taken from the undisputed allegations in the pleadings and documents of which the Court may take judicial notice. The Court grants the parties' requests for judicial notice, to which no objections have been directed.

4

> contingencies set forth in paragraph 18 occur, the State and the Tribe will commence new compact negotiations within 30 days of the date either party has been given notice of the occurrence of said contingency by the other party. . . . [I]f a new compact is not executed between the State and the Tribe within 120 days of the date these compact negotiations commence, notwithstanding the provisions of 25 U.S.C. § 2710(d)(7)(B)(i) the Tribe shall have the right to file suit pursuant to the provisions of 25 U.S.C. § 2710(d)(7)(B)(i) and the State shall have the right to assert any and all defenses it may have to said suit, except that the State hereby waives any right it might have to claim that said suit is premature by virtue of the provisions of 25 U.S.C. § 2710(d)(7)(B)(i).

Id. ¶ 19. The "contingencies set forth in paragraph 18" include various events that would prevent the compact from entering into effect as planned. The California legislature's failure to ratify the compact by September, 2007 is among the contingencies that would trigger paragraph 19.[2]

The previous lawsuit was stayed pending the legislature's ratification of the compact. However, the legislature failed to ratify the compact in either the 2006 or 2007 legislative sessions. In November, 2007, the parties submitted a case management statement informing the Court that "the parties' agreed September 17, 2007 deadline for the State legislature to ratify the Compact ha[d] passed" and that the parties had therefore "commenced new compact negotiations" "in accordance with the procedures set forth in [the] settlement agreement." Pl.'s Req. for Judicial Notice Ex. 3 at 1. The parties concurrently filed a stipulation of dismissal and the case was dismissed without prejudice.

---

[2] Although the California legislature's failure to ratify the compact is not expressly included among the listed contingencies, one of the contingencies is the compact being "deemed null and void pursuant to the provisions of section 14.2 thereof." Id. ¶ 18(f). Section 14.2 of the compact provides that the compact is null and void if it does not take effect by August 31, 2007.

Big Lagoon and the State have not been able to reach an agreement on a new gaming compact. Big Lagoon asserts that the State has not negotiated in good faith and filed the present lawsuit in April, 2009 to compel it to do so.

## LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides, "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

## DISCUSSION

I.   Proposition 5 and Proposition 29

The Eleventh Amendment provides, "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. Eleventh Amendment sovereign immunity extends to lawsuits brought against a state by its own citizens as well as by Indian tribes. Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 268-69. A state may waive its Eleventh Amendment immunity by statute or otherwise. A court will only find such a waiver, however, when it is evidenced by "the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction," and the waiver must "extend explicitly to suits in federal court."

6

Leer v. Murphy, 844 F.2d 628, 632 (9th Cir. 1988).

Congress may not abrogate the states' Eleventh Amendment immunity unless it is acting pursuant to the power granted to it by section 5 of the Fourteenth Amendment. Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996). In Seminole Tribe, the Supreme Court held that the Eleventh Amendment rendered states immune from federal lawsuits under IGRA. Accordingly, a state may only be subject to an IGRA action to compel it to negotiate in good faith if it has waived its sovereign immunity.

In August 1998, the California legislature ratified eleven gaming compacts (known as the Pala compacts) with Indian tribes. The ratification was codified in section 12012.5 of the California Government Code. Subsection (e) of that statute provides, "The Governor is authorized to waive the state's immunity to suit in federal court in connection with any compact negotiated with an Indian tribe or any action brought by an Indian tribe under the Indian Gaming Regulatory Act." The compacts did not enter into effect as planned, however, because a referendum petition was filed that sought voter approval of the ratification.

In November, 1998, the voters of California passed Proposition 5, a ballot initiative which required the State to enter into a specific compact allowing certain gambling activities on Indian lands with any tribe that was willing to accept the agreement. The initiative also required the governor to negotiate a different tribal-state compact with any tribe that wanted one. The initiative provided for a broader range of gambling activities than the compacts that were ratified by section 12012.5.

Prop. 5 contained a broad waiver of sovereign immunity that

7

was codified as the last sentence of section 98005 of the Government Code:

> [T]he State of California [] submits to the jurisdiction of the courts of the United States in any action brought against the state by any federally recognized California Indian tribe asserting any cause of action arising from the state's refusal to enter into negotiations with that tribe for the purpose of entering into a different Tribal-State compact pursuant to IGRA or to conduct those negotiations in good faith, the state's refusal to enter into negotiations concerning the amendment of a Tribal-State compact to which the state is a party, or to negotiate in good faith concerning that amendment, or the state's violation of the terms of any Tribal-State compact to which the state is or may become a party.

In August, 1999, the California Supreme Court held that the bulk of Prop. 5 was invalid because it was contrary to article IV, section 19(e) of the California Constitution, which provided that the "Legislature has no power to authorize, and shall prohibit casinos of the type currently operating in Nevada and New Jersey." Hotel Employees and Restaurant Employees Int'l Union v. Davis, 21 Cal. 4th 585 (1999).[3]  However, the court held that the final sentence of section 98005, which waives the State's sovereign immunity, was not unconstitutional and was severable from the rest of the initiative.  This sentence was therefore not struck down.

As noted above, the compacts ratified by section 12012.5 were subject to a referendum.  The referendum appeared on the March, 2000 ballot as Proposition 29.  The voters approved the referendum and section 12012.5 went into effect on March 8, 2000.

II. Waiver of Sovereign Immunity Pursuant to Statute

Big Lagoon argues that the broad waiver of sovereign immunity against IGRA suits contained in section 98005 applies to this case.

---

[3] This constitutional provision was later amended by initiative.

1  The State apparently concedes that, if section 98005 is still in
2  effect, it has waived its immunity with respect to this action.
3  The State argues, however, that in approving section 12012.5, Prop.
4  29 repealed Prop. 5's waiver of sovereign immunity. In the State's
5  view, section 12012.5(e) abandoned section 98005's broad waiver of
6  immunity in favor of permitting the governor to waive immunity in
7  the exercise of his discretion.

8  The State argues that section 12012.5(e) irreconcilably
9  conflicts with section 98005 and notes that, where an
10 irreconcilable conflict exists between two statutes, the latest
11 expression of the legislative will should prevail. See, e.g.,
12 Branch v. Smith, 538 U.S. 254, 273 (2003). At the same time, it is
13 a "cardinal rule" that implied repeals are disfavored. Morton v.
14 Mancari, 417 U.S. 535, 549 (1974). Thus, a later statute will only
15 be interpreted as repealing an earlier statute if there is an
16 actual "repugnancy between the words or purposes" of the statutes.
17 Nigg v. U.S. Postal Serv., 555 F.3d 781, 788 (9th Cir. 2009).

18 Although the text of section 12012.5(e) implicitly assumes
19 that the State has not already waived its sovereign immunity with
20 respect to IGRA actions, it does not refer to section 98005 or
21 purport to repeal it. Nor does section 12012.5(e) purport to
22 "restore" the State's right to sovereign immunity or to change the
23 status quo in any way other than by permitting the governor to
24 waive sovereign immunity if he so chooses. Although section
25 12012.5(e) may reflect a mistaken assumption about the status of
26 the State's sovereign immunity at the time it was passed, it is not
27 in direct conflict with section 98005, and should not be
28 interpreted as repealing the existing statute.

9

Moreover, the text of section 12012.5(e) must be understood in the context of its legislative history. When the statute was originally authored, Prop. 5 had not yet been passed, and thus the State had not yet waived its statutory immunity from suit under IGRA. Section 12012.5(e) simply provided that the governor could, at his discretion, choose to depart from what was then the status quo and waive sovereign immunity in connection with particular compacts or IGRA actions. After the voters passed Prop. 5, section 12012.5(e) became an artifact and was no longer necessary. It clearly could not have been intended in the first instance to "restore" sovereign immunity, in that sovereign immunity had not been waived at the time it was written.

Furthermore, there is no evidence that, in passing Prop. 29, the voters intended to repeal the broad waiver of sovereign immunity they had previously enacted with Prop. 5. Unlike Prop. 5, which took a systemic approach and would have permitted the operation of "Nevada-style casinos" by any tribe that wanted them, Prop. 29 simply approved eleven specific compacts that had already been ratified by the state legislature. The voter information materials on Prop. 29 say nothing about repealing section 98005's waiver of sovereign immunity; in fact, the Legislative Analyst's explanation of the measure says nothing about sovereign immunity at all. Rather, it simply explains the effect of the proposal as allowing the Pala compacts to enter into effect. There is thus no basis for concluding that the voters intended the artifact in section 12012.5(e) to change the status of California's sovereign immunity in connection with IGRA actions.

Finally, a number of IGRA cases have been filed after section

10

12012.5(e) went into effect, and none of the cases cited by the parties has been dismissed on the basis of sovereign immunity. See, e.g., Cachil Dehe Band of Wintun Indians v. California, No. 07-CV-1069 (E.D. Cal.); Quechan Tribe v. California, No 06-CV-0156 (S.D. Cal.).  Moreover, decisions in these cases have noted that, pursuant to section 98005, California waived its sovereign immunity to suits brought under IGRA.  See Artichoke Joe's Cal. Grand Casino v. Norton, 353 F.3d 712, 716 n.7 (9th Cir. 2003); Mechoopda Indian Tribe v. Schwarzenegger, 2004 WL 1103021, at *3 n.4 (E.D. Cal. 2004).  While it does not appear that the courts presiding over these cases were directly confronted with the issue of whether section 12012.5(e) repealed section 98005, the decisions demonstrate that the State's position in this litigation is one that it has not asserted in the past.

    The Court concludes that, pursuant to section 98005, the State has waived its sovereign immunity from suit under IGRA. Accordingly, the State's motion is properly denied on this ground alone.

III. Waiver of Sovereign Immunity Pursuant to the Settlement Agreement

    Even if the State were not subject to this suit pursuant to section 98005, it waived its sovereign immunity when it signed the settlement agreement.  As noted above, the agreement states in no uncertain terms that the State "has waived its sovereign immunity by virtue of the provisions of Government Code section 98005" and provides that, if the compact is not ratified and new negotiations are not successful, "the Tribe shall have the right to file suit" under IGRA.  The State focuses on the fact that the agreement

11

further provides that it has "the right to assert any and all defenses it may have to said suit."  Nonetheless, the State represented in the agreement that it had already waived any right to sovereign immunity pursuant to the broad waiver contained in section 98005.  The agreement was signed after section 12012.5(e) went into effect, and thus at a time when, according to the State's new position, section 98005 had been repealed.  It is disingenuous for the State to suggest that "any and all defenses" was intended to include a defense that the State concurrently represented had already been categorically waived.[4]  Moreover, the promise that the tribe could bring a new lawsuit would be meaningless if the State could simply change its position and invoke the absolute bar of sovereign immunity.

IV.  Governor Schwarzenegger as a Required and Indispensable Party

Rule 19(a)(1)(A) of the Federal Rules of Civil Procedure provides that a person who is subject to service of process and

---

[4]The State maintains that the waiver referred to in the agreement applied only to immunity from the 1999 action, which was filed before section 12012.5(e) was enacted, and thus was meant only to clarify that the Court could enforce the settlement agreement itself.  This argument appears to be a post hoc rationalization rather than a plausible interpretation of the intended meaning of the waiver at the time it was drafted, considering that the State has never taken the position that it is entitled to sovereign immunity from post-2000 IGRA suits until now.  Even if the State harbored a contemporaneous belief during settlement negotiations that it would be entitled to sovereign immunity against any future lawsuit by Big Lagoon, there is no evidence that the State disclosed this undiscernible interpretation of the waiver provision.  Any undisclosed understanding of the meaning of the waiver is irrelevant to the provision's interpretation.  See Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc., 109 Cal. App. 4th 944, 956 (2003) ("[I]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation.  The parties' undisclosed intent or understanding is irrelevant to contract interpretation.") (citation and internal quotation marks omitted).

12

whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if, in that person's absence, the court cannot accord complete relief among existing parties. The State notes that, under the California Constitution, only the governor is authorized to negotiate and conclude gaming compacts with Indian tribes. See Cal. Const. art. IV, § 19(f). The State argues that, because compliance with the relief requested in this action -- an injunction requiring the State to negotiate in good faith -- can only be carried out by Governor Schwarzenegger, the Governor is a necessary party and must be joined.

If Governor Schwarzenegger were joined as a defendant in this action, it would be in his official capacity as an agent of the State of California, not in his individual capacity. Because suits against a state officer in his or her official capacity "are in reality suits against the state itself," it is not clear that the Governor's joinder as an alter ego of the State would serve any purpose. Moreover, an injunction requiring the State to negotiate in good faith would be binding on the office of the governor, as an agency of the State. Governor Schwarzenegger, in his official capacity as an agent of the State, would not be free to disregard an injunction against the State itself. Hagood v. Southern, 117 U.S. 52, 69 (1886), and State v. Superior Court, 12 Cal. 3d 237, 255 (1974), which the State cites in support of its position, do not suggest otherwise.

The Court concludes that Big Lagoon need not join Governor Schwarzenegger as a defendant in this action.

13

CONCLUSION

For the foregoing reasons, the State's motion for judgment on the pleadings (Docket No. 9) is DENIED.

IT IS SO ORDERED.

Dated: 6/29/09

CLAUDIA WILKEN
United States District Judge