UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BIG LAGOON RANCHERIA,

        Plaintiff(s),

   v.

STATE OF CALIFORNIA,

        Defendant(s).
                                  /

No. C 09-01471 CW (JCS)

**ORDER RE DEFENDANT'S MOTION FOR PROTECTIVE ORDER**
**[Docket No. 33]**

## I.    INTRODUCTION

The Defendant's Motion for Protective Order Against Plaintiff's Request for Production of Documents and Any Further Discovery Related to Plaintiff's Claim for Bad Faith Negotiations of a Tribal-State Gaming Compact (the "Motion") and all further discovery were referred to the undersigned.[1] *See* Docket No. 34. A hearing was held on March 5, 2010, at 9:30 a.m. at which counsel for both parties appeared. The Court concludes that it would be inappropriate for this Court to prevent discovery and thereby limit the materials available to the parties' proposals and negotiations, judicially-noticeable information, and information on the State's affirmative defenses. There is no binding authority requiring the Court to limit discovery in the manner proposed by the State of California ("the State") here, and the District Court has not at this juncture decided that its review of the questions in this case is so limited. For the reasons stated at the hearing in this matter and as set forth more fully below, the Defendant's Motion is DENIED.

---

[1] The Plaintiff, Big Lagoon Rancheria (hereafter "the Tribe") has filed a Request to Take Judicial Notice in Support of its Opposition to Defendant's Motion for Protective Order. *See* Docket No. 42 (hereafter "RJN"). The seven matters that are the subject of the RJN consist of public documents filed in other cases, pleadings filed in this case and a related case, and legislative history. No objection was filed by the Defendant. Accordingly, the request for judicial notice is GRANTED.

## II. BACKGROUND

### A. The History of the Dispute Between the Parties[2]

The Tribe and the State have been engaged in compact negotiations since the fall of 1993. The Tribe filed a lawsuit under the Indian Gaming Regulatory Act ("IGRA") in 1999, alleging that the State had refused to negotiate in good faith. In August, 2005, the Tribe reached an agreement with the governor's office on the terms of a compact that would permit it to partner with another tribe to build a casino in Barstow, California. Big Lagoon and the State entered into a settlement agreement, pursuant to which the parties agreed to execute the compact within sixty days. Although the settlement agreement does not refer to any action on the part of the California legislature, legislative ratification was required by law for the compact to take effect.

Paragraph 19 of the settlement agreement states:

> The State and the Tribe agree that should any of the contingencies set forth in paragraph 18 occur, the State and the Tribe will commence new compact negotiations within 30 days of the date either party has been given notice of the occurrence of said contingency by the other party. . . . [I]f a new compact is not executed between the State and the Tribe within 120 days of the date these compact negotiations commence, notwithstanding the provisions of 25 U.S.C. § 2710(d)(7)(B)(i), the Tribe shall have the right to file suit pursuant to the provisions of 25 U.S.C. § 2710(d)(7)(B)(i) and the State shall have the right to assert any and all defenses it may have to said suit, except that the State hereby waives any right it might have to claim that said suit is premature by virtue of the provisions of 25 U.S.C. § 2710(d)(7)(B)(i).

The "contingencies set forth in paragraph 18" include various events that would prevent the compact from entering into effect as planned. The California legislature's failure to ratify the compact by September 2007 is among the contingencies that would trigger paragraph 19. The previous lawsuit was stayed pending the legislature's ratification of the compact. However, the legislature failed to ratify the compact in either the 2006 or 2007 legislative sessions.

In November 2007, the parties submitted a case management statement informing the district court that "the parties' agreed September 17, 2007 deadline for the State legislature to ratify the Compact ha[d] passed" and that the parties had therefore "commenced new compact negotiations" "in accordance with the procedures set forth in [the] settlement agreement." The parties concurrently filed a stipulation of dismissal and the case was dismissed without prejudice. The

---

[2] The following facts are taken largely from Judge Wilken's Order Denying Defendant's Motion for Judgment on the Pleadings dated June 29, 2009. *See* Docket No. 21.

2

Tribe and the State have not been able to reach an agreement on a new gaming compact. The Tribe asserts that the State has not negotiated in good faith within the meaning of the IGRA and filed the present lawsuit on April 3, 2009 to compel the State to do so. Plaintiff seeks an order compelling the State to conclude a compact with the Tribe within the 60-day period of time proscribed by the IGRA.

The State characterizes the allegations of the Complaint as falling into three general categories: First, the Tribe alleges bad faith regarding the negotiations leading up to Governor Schwarzenegger's execution of a compact with Big Lagoon on September 9, 2005 to operate a Gaming Facility in Barstow. Second, the Tribe alleges bad faith with respect to the events leading up to the termination of the Barstow Compact in September 2007 when the California legislature failed to ratify it pursuant to the provisions of article IV, section 19(f) of the California Constitution. The third category of allegations relates to the negotiations for a compact that commenced in September 2007 as a result of Big Lagoon's request to Governor Schwarzenegger.

The Tribe alleges a pattern of "surface bargaining" over the course of the past fifteen years – negotiating without any real intent to reach an agreement, despite the written record of negotiations – and argues that the documents it seeks are likely to lead to admissible evidence needed to prove its claims. Plaintiff's Opposition ("Opp."). at 1.

**B.     The Document Requests in Dispute**

The Tribe has propounded nineteen document requests that it argues will lead to admissible evidence related to its claim that the State has engaged in "surface bargaining" with the Tribe for the past 15 years, leading up to the most recent negotiations and present lawsuit. Opp. at 3; *see* Plaintiff's First Set of Requests for Production of Documents to Defendant State of California, served on October 28, 2009; attached as Exhibit A to the Declaration of Bruce H. Jackson in Support of Opposition to State's Motion for Protective Order (hereafter "Jackson Decl.")

For example, requests 10 and 11 seek documents regarding the State's efforts to obtain legislative ratification of the Barstow compact. In document request number 12, the Tribe seeks documents that relate to communications between the State and any other person or entity pertaining to the negotiations for class III gaming with the Tribe. Jackson Decl., Exh. A. According to the Tribe, these documents "would show, or lead to the discovery of admissible evidence regarding, the

3

underlying state of mind and motives of the state during this attenuated history of negotiations." Plaintiff's Opp. at 4. The document requests that are the subject of the present dispute are set forth in their entirety as follows:

**REQUEST FOR PRODUCTION NO. 1:**

ALL DOCUMENTS PERTAINING TO each and every denial, admission, averment, and allegation in YOUR Defendant State of California's Answer to Complaint Pursuant to the Indian Gaming Regulatory Act, dated April 23, 2009, and filed in this action.

**REQUEST FOR PRODUCTION NO. 8:**

ALL DOCUMENTS PERTAINING TO the State's Affirmative Defense that Big Lagoon's Complaint fails to state a basis upon which relief can be granted, as alleged in YOUR Answer dated April 23, 2009.

**REQUEST FOR PRODUCTION NO. 9:**

ALL DOCUMENTS PERTAINING TO ANY negotiations between the State of California and Big Lagoon Rancheria to conclude a tribal-state class III gaming compact, including but not limited to ALL negotiations referred to in the Introduction in YOUR Answer dated April 23, 2009.

**REQUEST FOR PRODUCTION NO. 10:**

ALL DOCUMENTS PERTAINING TO ANY COMMUNICATIONS between the relevant officers within the Executive Branch of the State of California and the State Legislature that PERTAIN TO ratification of the Barstow Compact.

**REQUEST FOR PRODUCTION NO. 11:**

ALL DOCUMENTS PERTAINING TO attempts to obtain legislative ratification of the Barstow Compact.

**REQUEST FOR PRODUCTION NO. 12:**

ALL DOCUMENTS PERTAINING TO ANY COMMUNICATIONS between the State and ANY other person or entity that PERTAIN TO any compact authorizing class III gaming by Big Lagoon or negotiations toward such a compact.

**REQUEST FOR PRODUCTION NO. 19:**

ALL DOCUMENTS PERTAINING TO ANY concessions offered by the State to Big

Lagoon, in the course of negotiations toward the formation of a tribal-state compact for class III gaming, in return for particular concessions requested of Big Lagoon that the State did not require of other tribes with whom it negotiated compacts.

**C.     The Defendant's Motion**

The State objects to the requests for production, which seek *inter alia*, all documents relating to the negotiations and communications with various parties regarding the negotiations and the compact with the Tribe. It argues that discovery on the question of good faith should be limited to the formal record of the substance of the negotiations between the parties, largely consisting of offers, counter-offers, and other communications between the parties (along with any judicially-noticeable information). *See* Motion at 2 (there is no dispute that the State and the Tribe "made offers and counteroffers" and no dispute as to the content of those proposals). It also advances four main arguments in support of its contention that discovery should be limited with respect to the first and second categories of allegations in this case: 1) The essential facts underlying Plaintiff's bad faith claim are undisputed; therefore, there are no relevant facts to discover; 2) any IGRA claim for bad faith negotiation as to the Barstow compact fails because no claim for bad faith negotiation asserted after a compact has been executed can proceed as a matter of law; therefore, discovery related to events preceding the execution of the Tribe's Barstow Compact cannot lead to admissible evidence; and 3) the legislature's failure to ratify the Barstow Compact does not give rise to an IGRA bad faith negotiation claim; thus discovery related to the Compact ratification process cannot lead to admissible evidence; and finally, 4) even if IGRA's good faith requirement applies to the state's legislative ratification process, the State is immune under the Eleventh Amendment because the limited waiver in California Government Code Section 98005 does not extend to the Legislature's consideration of the governor's actions.

With respect to the third category of allegations – whether the State has negotiated in good faith within the meaning of the IGRA during the September 2007-2009 negotiations between Big Lagoon and Governor Schwarzenegger – the State argues that it "has or will provide Big Lagoon with all documents in its possession memorializing the substance of the negotiations between the parties, no further document production or discovery is appropriate with respect to Big Lagoon's bad faith negotiation allegations." Motion at 2. The State argues that there is no dispute that Governor

5

Schwarzenegger has engaged in negotiations with the Tribe for another compact and that they have exchanged offers and counter-offers. *Id.* The State claims that the documents memorializing this exchange have been provided, as well as "documents supporting those proposals." *Id.* It asserts that these documents are all that is necessary to a determination of the good faith question.

The Tribe responds that its document requests are aimed at allowing it to prove its claim that the State has not negotiated in good faith during the past fifteen years that the Tribe has been attempting to negotiate with the State of California. The Tribe argues that the State has engaged in what has been recognized in the Ninth Circuit as "surface bargaining" – participating in negotiations without any real intent to reach an agreement. Opp. at 7. The Tribe argues, analogizing to the law regarding good faith bargaining requirements under the National Labor Relations Act ("NLRA") that the law is clear that "ascertaining compliance with the duty to bargain in good faith generally requires inquiry into . . . motive or state of mind during the bargaining process." Opp. at 1, 7. The Tribe argues that there is no basis for limiting discovery to the "record of negotiations" in this case. *Id.* Thus, the State's attempt to limit discovery to those matters currently "in the record" should not be permitted. *Id.* The Tribe argues that after the expiration of the Barstow Compact, "the State continued to prioritize proposals for off-reservation sites, which would have required Big Lagoon to go through various additional permitting procedures to begin development." Opp. at 3. According to the Tribe, the State also insisted on numerous concessions that it did not require of other tribes.

In its reply, the State disputes the Tribe's characterization of its motion, arguing that it is not seeking to limit the good faith determination in this case to the record of negotiations between the parties; rather, the State seeks to limit discovery to: 1) the parties' proposals; 2) "judicially noticeable information" and 3) evidence related to the State's affirmative defenses. Reply at 3.

### III.   ANALYSIS

#### A.   Legal Standard – Discovery

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Rule 26(b)(1) further provides that "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

1    Fed.R.Civ.P. 26(c) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In light of the broad discovery rules, protective orders provide a safeguard for parties and other persons. *United States v. Columbia Broadcasting Sys., Inc.*, 666 F.2d 364, 368-369 (9th Cir. 1982). The party or person seeking the protective order bears the burden of making a specific showing that harm or prejudice will result if the order is not entered. *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (citations omitted).

**B.     Legal Standard – Good Faith Under the IGRA**

The parties are in agreement that the IGRA requires the State to negotiate with tribes in good faith with regard to class III gaming compacts. Because the standard is undefined, however, the parties disagree on the question of what evidence may be used to prove compliance with the good faith requirement. The core of the State's argument is that despite the permissive federal discovery standard discussed above, discovery under the IGRA should be limited to the offers, counter-offers, and documents supporting those proposals, and any information of which the court may take judicial notice (along with evidence on affirmative defenses). As relevant here, the State asserts that, aside from judicially-noticeable information and its affirmative defenses, only the documents they have already produced – what one court called the "transcript of the negotiations" – are relevant to good faith. Other documents pertaining to the negotiations and the Compact, such as communications within the State or between the State and someone other than the Tribe, are of no relevance to good faith. *See, e.g.*, Doc. Req. Nos. 10-12.[3]

The Court notes first that the question of whether a trial court may consider evidence other than that contained in the proposals and counter-proposals of the parties (and judicially-noticeable information) in determining "good faith" has not been resolved by a binding court decision. As described below, there is a good argument – and this Court believes a correct argument – that there is no restriction against considering evidence outside of the proposals and counter-proposals in addressing the good faith issue. That question, however, will ultimately be decided by the District

---

[3] Although the State objects that judicially-noticeable information may be of relevance, it specifically eshews the position that this includes evidence of the type sought by the discovery here: evidence of internal and external communications by a party – other than the negotiating positions themselves – which might show bad faith.

7

Judge on summary judgment. The only question before this Court is whether discovery should be limited. In light of the (at least) persuasive argument that the District Judge's evaluation of the good faith issue is not limited in the manner suggested by the State, it would be inappropriate to cut off discovery in an area that may reasonably be expected to be admissible on the question. *See* Fed.R.Civ. P. 26(b)(1).

The Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.*, provides that certain types of gaming on Indian ancestral lands may only be conducted "in conformance with a Tribal-State compact entered into by the Indian Tribe and the State and approved by the Secretary of the Interior." *Coyote Valley Band of Pomo Indians (In re Indian Gaming Related Cases) v. California* ("*Coyote Valley II*"), 331 F.3d 1094, 1097 (9th Cir. 2003) (citing 25 U.S.C. § 2710(d)(1), (3)(B)). A tribe seeking to conduct gaming may request that the state "enter into negotiations for the purpose of entering into a Tribal-State compact" governing the gaming activity. 25 U.S.C. § 2710(d)(3)(A). The State is required to conduct those negotiations "in good faith." *Id.* In order to enforce the State's obligation, the tribes may sue in federal court, provided that there has been a waiver of sovereign immunity.[4] *Id*. California has waived its sovereign immunity. *Coyote Valley II*, 311 F.3d at 1097. If the court concludes that the State has failed to negotiate in good faith, then it "shall order the State and the tribe to conclude a compact within a 60-day period." *Id.* (citing § 2710(d)(7)(B)(iii)). If the parties fail to do so, then they must submit to a court-appointed mediator who chooses between the two proposed compacts, the one that best adheres to the requirements of the IGRA. *Id.* at 1098.

There is nothing in the IGRA that expressly limits discovery in actions brought in federal court. Nor is there anything implicit in the statute that limits discovery in the manner now proposed by the State. To the contrary, the IGRA sets forth a procedure that contemplates the enforcement of

---

[4] These requirements were somewhat limited by the Supreme Court's decision in *Seminole Tribe v. Florida*, 517 U.S. 44 (1996), which held that the Eleventh Amendment prevents tribes from enforcing the remedial provisions of the IGRA against a state in federal court unless the state has consented. *Coyote Valley II* at 1099 n.5. The State of California subsequently waived its Eleventh Amendment immunity. *See* Cal. Gov't. Code § 98005.

8

the statutory obligations in federal court, which would implicate the Federal Rules of Civil Procedure and trigger standard civil discovery obligations.[5]

Moreover, the legislative history supports the conclusion that discovery beyond that contemplated by State was anticipated by Congress. As the Ninth Circuit noted in reference to the legislative history regarding the statutory requirement of good faith negotiation: "The Committee notes that *it is States not tribes that have crucial information in their possession* that will prove or disprove tribal allegations of failure to act in good faith." Opp. at 9 (citing *Coyote Valley II*, 331 F.3d at 1108) (citing S. Rep. No. 100-446 at 14 (1988) (emphasis supplied)). That "crucial information" cannot be limited to the proposals and counter-proposals of each side: presumably both the Tribe and the State have copies of such documents. Congress anticipated that there would be other information, bearing on good faith, that would only be available from the State. Therefore, the Legislature envisioned that the good faith determination will necessarily include matters beyond the bargaining positions. Moreover, as the Tribe points out, information limited to what is in "the record" of negotiations is arguably information that only reflects the "surface bargaining" position of the State.[6]  Opp. at 9.

In support of its argument that discovery must be severely limited, the State cites to the Ninth Circuit's decision in *Coyote Valley II*. The Tribe similarly cites to *Coyote Valley II*. *Coyote Valley* does not address the issue of whether parties are entitled to discovery under the IGRA. Nothing in *Coyote Valley II* suggests that discovery should be limited to the proposals and counter-proposals between the parties or to judicially-noticeable information. *Coyote Valley II* does not purport to

---

[5] The State argues that the IGRA is silent with respect to discovery and that this "appears [to be] based on the premise that no discovery is needed to determine the issue of good faith." Motion at 5. The Court disagrees. Many statutes do not have civil discovery provisions – and do not by implication limit discovery in cases arising under their provisions. There are exceptions to this general rule, such as ERISA. One of ERISA's primary goals is "'to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously.'" *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005) (citation omitted). In light of this goal, discovery in ERISA cases is not as broad as in other types of civil litigation *Klund v. High Tech. Solutions, Inc*., 417 F. Supp. 2d 1155, 1159 (S.D. Cal. 2005). Here, however, an examination of the statute at issue in this case does not lead to that same conclusion.

[6] Moreover, section I of the IGRA provides that a district court may " take into account the public interest, public safety, criminality, financial integrity, and adverse economic impacts on existing gaming activities" in making its determination as to good faith. Opp. at 9. As the Tribe points out, the materials listed in section I are "by their nature outside of the formal record of negotiations between States and Tribes." *Id.*  These subjects are also capable of being proven by methods other than judicial notice.

9

1  address what materials can be considered by a district court. To the contrary, the Ninth Circuit in
2  *Coyote Valley II* recognized that "the good faith inquiry is nuanced and fact-specific and is not
3  amenable to bright-line rules." *Coyote Valley II*, 331 F.3d at 1113.

4  There is limited district court authority addressing the IGRA's good faith requirement. The
5  district court decisions cited by the parties on this issue are split, and the Court finds those cited by
6  the Tribe to be more persuasive.[7] *See e.g., New York v. Oneida Indian Nation*, 2007 WL 2287878 at
7  *11-13 (N.D.N.Y. August 7, 2007). In *Oneida Nation*, the district court found that it was proper to
8  depose state officials involved in settlement negotiations with the Oneida Nation because their
9  testimony would be relevant to a finding that the State acted in bad faith. The court made no finding
10 regarding admissibility of evidence relating to settlement negotiations at trial, concluding that: "[I]t
11 is simply enough to determine, pursuant to the standard established in Rule 26(b)(1), whether the
12 depositions in question may lead to evidence admissible at trial." *Id*. at *13 (citation omitted).

13 In another district court decision cited by the Tribe, *Seminole Tribe v. Florida*, the court
14 ordered discovery to be re-opened in a case involving allegations of bad faith compact negotiations.
15 *Seminole Tribe v. Florida*, 1993 WL 475999, at *1 (S.D. Fla. Sept. 22, 1993). The district court
16 allowed the tribe to conduct discovery on the issue of the State's treatment of non-Indian entities
17 operating gambling cruises. *Id.* In the related case *Big Lagoon Rancheria v. State of California*,
18 Case No. C-99-4995 CW, (attached as Exhibit 5 to Big Lagoon's RJN), the District Court provided
19 guidance regarding its views on the subject of evidence of bad faith. RJN, Exh. 5. The District
20 Court indicated that evidence of bad faith could be found in how the State treated Big Lagoon
21 relative to other tribes – the demands the State made on Big Lagoon and concessions it offered to
22 Big Lagoon, in comparison to its demands on and concessions of other tribes. The District Court
23 appears to agree with the Tribe's argument that at least some of these matters would be found

---

[7]The State cites to a district court decision from South Dakota in which the district court, in an order regarding the plaintiff's motion for summary judgment and for a preliminary injunction, stated: "It is the court's view that the determination of whether the State is negotiating in good faith should be made on the basis of the transcripts of the negotiating sessions." *Cheyenne River Sioux Tribe v. South Dakota*, 830 F.Supp. 523, 527 (D.S.D. 1993). The district court in that case cites to no authority for this proposition. Further, there is nothing in the opinion that indicates whether that court limited discovery in the case.

10

outside of the record of the bargaining positions of the parties and are relevant.[8]  In its Order Denying Plaintiff's Motion for Summary Judgment, dated August 4, 2003, the District Court stated:

> Accordingly, the State could in good faith ask the Tribe to make particular concessions that it did not require of other tribes, due to Big Lagoon's proximity to the coastline or other environmental concerns unique to Big Lagoon.  The State could demonstrate the good faith of its bargaining position by offering the Tribe concessions in return for the Tribe's compliance with requests with which the other tribes were not asked to comply.  The Court declined at that time to make a final determination of bad faith on the part of the State because of the novelty of the issue of good faith bargaining under the IGRA.

*Id.* at 5:14-24.

The Court is not persuaded by the district court cases cited by the State that have addressed the question, finding that litigation of a bad faith negotiation claim is limited to the record of negotiations.  In *Rincon Band of Luiseno Mission Indians v. Schwarzenegger et. al.*, the court granted the Governor's motion for a protective order against discovery and held that it would only consider the record of negotiations between the parties in considering the State's bad faith negotiation.  Motion, Exh. B at 16 (*Rincon*, No. 04-cv1151 W (WMc) (S.D. Cal. April 11, 2006) (order granting defendant's motion for protective order)).  The court held that "[t]he recordings, offers, counter-offers and other documents that are part of the negotiations constitute the evidence the Court will consider to determine the issue of good faith."  *Id.*  Similarly, in *Fort Independence Indian Community v. California, et al.*, the court concluded that the decision in *Rincon* comported with Ninth Circuit cases involving the issue of good faith negotiation.  Motion, Exh. C at 9 (*Fort Independence*, No. Civ S-08-432 LKK/KJM (May 7, 2009) (order denying reconsideration)).  It reviewed a magistrate judge's order for abuse of discretion and found that the order limiting the scope of discovery to the record of negotiations was "a permissible exercise of the magistrate's discretion."  *Id.*

In *Fort Independence, supra*, the district court recognized the absence of case law interpreting the IGRA and cited *Coyote Valley II* for the proposition that courts look to NRLA cases

---

[8] Indeed, the State itself has recognized that evidence about the claims and defenses in this litigation can be found outside of the formal record of compact negotiations.  In its Rule 26 disclosure, the State listed some 26 individuals or entities, the majority of whom the Tribe contends did not participate in any compact negotiations between the Tribe and the State.  Opp. at 12 (citing Jackson Decl., Exh. C (State of California's Initial Disclosure Pursuant to Federal Rule of Civil Procedure 26(a)).

11

for guidance. Exh. C at 3.[9] Nonetheless, the district court declined to apply the analysis of the NRLA decisions, and distinguished them by pointing out the ways in which the "NLRA and IGRA differ." *Id.* The district court concluded that while NRLA cases offer guidance they are "not to be applied to the IGRA "wholesale." *Id.* (citing *Coyote Valley II*, 147 F.Supp. 2d at 1021). The district court in *Fort Independence* declined to adopt the principle enunciated in the Ninth Circuit NRLA decisions: determining "good faith" by inquiring into the parties' state of mind and all of the facts and circumstances in addition to the record of negotiations between the parties. The court then explained that in *Coyote Valley II* as in two NRLA decisions that hold that the good faith requirement is a fact-specific inquiry, *NRLB v. Dent*, 534 F.2d 844, 846 (9th Cir. 1976) and *NLRB v. Stanislaus Implement & Hardware Co.*, 226 F.2d 377, 381 (9th Cir. 1955), the circuit actually discussed "objective facts relating to the record of negotiations." *Id.* The *Fort Independence* court, therefore, was not persuaded by the language in those cases describing the bad faith inquiry as a factual one. *See NRLB v. Stanislaus Implement & Hardware Co.*, 226 F.2d 377 at 381 ("True as it may be that negotiations when viewed in isolation reflect a mind open to agreement, a truer picture is seen by bringing into the open the events which followed the meetings, and by viewing the entire proceeding. A state of mind such as good faith is not determined by a consideration of events viewed separately. The picture is created by a consideration of all the facts viewed as an integrated whole.")

This Court finds the reasoning of *Fort Independence* unpersuasive. There is nothing in the *Coyote Valley II* decision that limits the inquiry in the manner suggested. First, the standard used by the *Fort Independence* court is inconsistent with the good faith standard applied in NLRA cases: in *NRLB v. Stanislaus*, it appears that the Ninth Circuit looked at facts beyond those contained in the record of negotiations. Second, although the court in *Coyote Valley II* referred to the negotiations of the parties in its decision, it did not purport to limit the inquiry on good faith, let alone discovery, to the record of negotiations.

---

[9]As Judge Wilken explained in *Coyote Valley Band of Pomo Indians (In re Indian Gaming Related Cases) v. California*, 147 F. Supp. 2d 1011, 1020-21 (N.D. Cal. 2001) (hereafter referred to as "*Coyote Valley I*"), *affirmed*, 331 F.3d 1094 (9th Cir. 2003): "The Court looks for guidance to case law interpreting the National Labor Relations Act (NLRA). Like IGRA, the NLRA imposes a duty to bargain in good faith, but does not expressly define 'good faith' . . . the Court considers the NLRA case law for guidance in interpreting a standard undefined by the IGRA."

Finally, as pointed out by the Tribe in its opposition to the present motion, the court in *Fort Independence*, in a later decision, allowed additional evidence on the issue of the value of exclusive gaming rights and expected gaming revenue. *See* RJN, Exh. 4 (*Fort Independence*,, No. Civ. S-08-432 LKK/KJM (July 8, 2009) (order permitting submission of further briefing). The court found that it could not decide the pending cross-motions for summary judgment due to a lack of evidence on a "potentially significant issue." *Id*. at 2. The court explained that this failure of the parties to submit significant evidence "may be due to the court's own orders in this case." *Id.* The court explained that it did not intend, by its earlier order upholding the magistrate's decision, to preclude the introduction of "other evidence that was neither an action, offer or counter-offer." *Id.*

Similarly, in *Rincon*, *supra,* another district court decision cited by the State, the Tribe requested discovery that included numerous depositions of state officials, including a justice of the California Court of Appeal and the Governor's legal affairs secretary and his legal counsel and chief negotiator. The district court in *Rincon* acknowledged the NLRA decisions cited by parties. *See* Motion, Exh. B at 9 (quoting *Seattle-First Nat'l. Bank v. NRLB*, 638 F.2d 1221, 1226 (9th Cir. 1981) ("Since it would be extraordinary for a party directly to admit a 'bad faith' intention, his motive must of necessity be ascertained from circumstantial evidence")). Yet, in the analysis portion of the decision, the district court declined to address those decisions, nor did it apply the import of those decisions on the issue of what comprises "good faith." The court instead cited *Coyote Valley II*, acknowledged that it does not address the issue of discovery, but concluded that the case was decided based upon a review of objective, not subjective factors. *Id.* (citing *Coyote Valley II* at 1107). The district court was also persuaded by the fact that the IGRA is silent with respect to discovery, explaining that the statute calls for "a *political solution* not a litigation solution." *Id.* at 15 (emphasis in original).

The Court is not persuaded by this reasoning. Although the district court in *Rincon* correctly noted that the IGRA sets forth a "procedure," that procedure contemplates the enforcement of the statutory obligations in federal court, which would implicate the Federal Rules of Civil Procedure and trigger standard civil discovery obligations.

On balance, the Court is persuaded by the NRLA cases and the Ninth Circuit's recognition in *Coyote Valley II,* that the good faith determination is one that takes into account all of the facts and

13

circumstances, not just the bare "record" of negotiations between the parties. *Coyote Valley II* , 331 F.3d 1094 (citing to legislative history of the IGRA explaining that "crucial information" regarding good faith is uniquely in the hands of the state); *see also NRLB v. Dent*, *supra*, (whether party has negotiated in good faith to be determined by "the previous relations of the parties, antecedent events explaining behavior at the bargaining table, and the course of negotiations") (citations omitted).  At a minimum, it would be inappropriate to cut off discovery by limiting the record to the history of negotiations in an area that will ultimately be decided by the District Court.

### C. The Facts of the Case are Not "Undisputed"

The State argues that "[t]he essential facts regarding Big Lagoon's bad faith negotiation claim are not in dispute.  As a result, there are no relevant matters to discover outside of the record of the 2007-2009 negotiations between the parties." Motion at 4.  The State, therefore, claims that the present lawsuit presents "only legal questions." *Id.*  The Tribe responds that the question of whether the State has acted in good faith must be made with reference to specific facts and that "discovery to uncover those facts must be permitted." Opp. at 5.  The Tribe also disputes the State's characterization of the issue as a "purely legal question" arguing instead that the determination of good faith under the IGRA is a "mixed question of law and fact." *Id.* (citing *Coyote Valley II*, 331 F.3d at 1107.  As stated above, the Court agrees with the Tribe that additional facts – beyond those contained in the record of negotiations – may be relevant and are discoverable here, particularly given the broad federal discovery rules.  The Court will allow discovery on the subjects in the Tribe's document requests, subject to the Court's order below requiring the parties to meet and confer in order to narrow the requests.  The admissibility of those documents at trial is a determination for a later date, and one that is within the province of the District Court.

### D. The Relevance of the Requested Documents

Having concluded that discovery is broader than simply the record of negotiations in this case, the Court next turns to whether the specific document requests at issue here are likely to lead to admissible evidence.  While the specific categories need to be narrowed through the meet and confer process, none of the relevance questions raised by the State on this motion has merit.

The State argues that certain categories of documents are simply irrelevant.  First, the State argues that since the Barstow Compact was entered into between the parties, documents preceding

14

that time are irrelevant to whether the current compact was negotiated in bad faith. *See* Document Req's. Nos. 10, 11. The Court disagrees. The issue here is whether proof of the Tribe's legal claim may be found through the discovery of relevant documents. The pre-Barstow events, while not a separate basis for a lawsuit, may be relevant to the State's good faith after that time period. The State has cited no law, and the Court has found none, that stands for the proposition that the IGRA limits discovery to discrete negotiating sessions or that once a negotiating session is terminated, it no longer has any relevance to a subsequent claim of bad faith.

The State's jurisdictional argument fares no better. The State argues that the Tribe is seeking relief for the failed Barstow compact and that this Court lacks jurisdiction over that determination. The issues before the Court are not jurisdictional. The evidence sought is claimed to be relevant to the good faith of the state in negotiating *after* the Barstow compact was signed. There is no challenge to the Barstow compact. The district court has jurisdiction over the claims in this case. The Tribe has alleged the legal prerequisites for maintaining an action under the IGRA:  1) over 180 days have passed since the Tribe asked the State to enter into compact negotiations; 2) a Tribal-State compact has not been entered into; and 3) the State has not responded to the Tribe's request to enter into compact negotiations or has not responded in good faith. 25 U.S.C. § 2710(d)(7)(B).

As discussed in greater detail above, Ninth Circuit cases under the NRLA support the conclusion that discovery is not limited to the record of negotiations for the recent compact only, and that relevant evidence of bad faith can be found by examining many factors, including the prior relationships of the parties, "antecedent events explaining behavior at the bargaining table, and the course of negotiations . . . ." Opp. at 14 (citing *NLRB v. Dent*, 534 F.2d 844, 846 (9th Cir. 1976) (citations omitted)). The Court is not persuaded by the State's argument that any pre-Barstow bad faith negotiations are irrelevant. While they cannot be used to challenge the Barstow compact, they may be relevant to a determination of bad faith in the most recent negotiations. The Court is not inclined to deny all inquiry into this area, thereby depriving the District Court of the ability to make substantive rulings in the case on this issue.[10]

---

[10]The Court is similarly unpersuaded by the State's arguments regarding the allegations that the State has acted improperly in connection with the Legislature's failure to ratify the compact with the Tribe. Motion at 7; Opp. at 15. The State goes to great lengths to argue that the "good faith" requirement does not extend to ratification. Motion at 8-10. The claim of bad faith is not based on failure to ratify. Rather, the Tribe argues that the State's conduct during the ratification process may

15

1    Finally, the State's contention that even if this Court could consider those allegations, the
2 State is protected by the Eleventh Amendment because the State did not waive its immunity "to such
3 a suit with the enactment of California Government Code section 98005" (Motion at 7) is misplaced.
4 The Tribe seeks documents that would show the State's actions during the ratification process as
5 evidence of bad faith. Importantly, the Tribe does not allege that the communications will
6 demonstrate that the State failed to ratify the compact in good faith. Rather, the Tribe argues that
7 antecedent events show a pattern of bad faith negotiations.

**IV.    CONCLUSION**

For the foregoing reasons, the State's Motion for Protective Order is DENIED. The parties are hereby ORDERED to meet and confer regarding the Tribe's discovery requests in order to narrow the document requests, which appear to be overly broad. The Court will not address potential privilege issues at this time because they were not briefed.

The Court advised the parties of its ruling at the hearing on March 5, 2010, and also advised them that a written order memorializing that decision would be forthcoming. At a hearing on March 17, the parties asked the Court to clarify whether the time for objection to the Court's ruling would run from March 5, or the date of the written order reflecting the ruling. In light of this ambiguity, the parties have stipulated, and the Court orders, that all objections to this ruling be filed and served within ten (10) calendar days of the date of this written order.

IT IS SO ORDERED.

Dated: March 19, 2010

JOSEPH C. SPERO
United States Magistrate Judge

---

constitute evidence of bad faith. The Tribe seeks discovery of documents that might show that the activities of the State during the ratification process show a pattern and practice of bad faith negotiating or "surface bargaining." Opp. at 15. It is the Court's view that documents that demonstrate the State's involvement in the Legislature's consideration of the Barstow Compact might lead to the discovery of admissible evidence. "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

16