**United States District Court**
For the Northern District of California

1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7  BIG LAGOON RANCHERIA,                    No. C 09-01471 CW (JCS)

8          Plaintiff(s),

9      v.                                   **ORDER GRANTING IN PART**
                                            **DEFENDANT'S MOTION FOR**
10  STATE OF CALIFORNIA,                    **RECONSIDERATION**
                                            **[Docket No. 76]**
11          Defendant(s).

12  _____/

13

14  **I.     INTRODUCTION**

15          The Defendant's Motion for Reconsideration of this Court's Order denying Defendant's

16  Motion for Protective Order was referred to the undersigned. *See* Docket No. 77.  A hearing was

17  held on July 9, 2010.  Having considered the papers filed by the parties, the arguments of counsel at

18  the hearing, and for the reasons stated below, the Defendant's Motion for Reconsideration (hereafter

19  "the Motion") is GRANTED IN PART.

20  **II.    BACKGROUND**

21          **A.     The History of the Dispute Between the Parties**[1]

22          The Tribe and the State have been engaged in compact negotiations since the fall of 1993.

23  The Tribe filed a lawsuit under the Indian Gaming Regulatory Act ("IGRA") in 1999, alleging that

24  the State had refused to negotiate in good faith.  In August, 2005, the Tribe reached an agreement

25  with the governor's office on the terms of a compact that would permit it to partner with another

26  tribe to build a casino in Barstow, California.  Big Lagoon and the State entered into a settlement

27  agreement, pursuant to which the parties agreed to execute the compact within sixty days.  Although

28
          _____

          [1]The following facts are taken largely from Judge Wilken's Order Denying Defendant's Motion
          for Judgment on the Pleadings dated June 29, 2009 (*see* Docket No. 21) and repeated in this Court's
          Order Denying Defendant's Motion for Protective Order (Docket No. 64).

United States District Court

For the Northern District of California

1    the settlement agreement does not refer to any action on the part of the California legislature,

2    legislative ratification was required by law for the compact to take effect.

3         Paragraph 19 of the settlement agreement states:

4

5         The State and the Tribe agree that should any of the contingencies set forth in paragraph 18 occur, the State and the Tribe will commence new compact negotiations within 30 days of the date either party has been given notice of the occurrence of said contingency by the other

6         party. . . . [I]f a new compact is not executed between the State and the Tribe within 120 days of the date these compact negotiations commence, notwithstanding the provisions of 25

7         U.S.C. § 2710(d)(7)(B)(i), the Tribe shall have the right to file suit pursuant to the provisions of 25 U.S.C. § 2710(d)(7)(B)(i) and the State shall have the right to assert any and all

8         defenses it may have to said suit, except that the State hereby waives any right it might have to claim that said suit is premature by virtue of the provisions of 25 U.S.C. §

9         2710(d)(7)(B)(i).

10   The "contingencies set forth in paragraph 18" include various events that would prevent the compact

11   from entering into effect as planned.  The California legislature's failure to ratify the compact by

12   September 2007 is among the contingencies that would trigger paragraph 19.  The previous lawsuit

13   was stayed pending the legislature's ratification of the compact.  However, the legislature failed to

14   ratify the compact in either the 2006 or 2007 legislative sessions.

15        In November 2007, the parties submitted a case management statement informing the district

16   court that "the parties' agreed September 17, 2007 deadline for the State legislature to ratify the

17   Compact ha[d] passed" and that the parties had therefore "commenced new compact negotiations"

18   "in accordance with the procedures set forth in [the] settlement agreement."  The parties

19   concurrently filed a stipulation of dismissal and the case was dismissed without prejudice.  The

20   Tribe and the State have not been able to reach an agreement on a new gaming compact.  The Tribe

21   asserts that the State has not negotiated in good faith within the meaning of the IGRA and filed the

22   present lawsuit on April 3, 2009 to compel the State to do so.  Plaintiff seeks an order compelling

23   the State to conclude a compact with the Tribe within the 60-day period of time proscribed by the

24   IGRA.

25        The State characterizes the allegations of the Complaint as falling into three general

26   categories:  First, the Tribe alleges bad faith regarding the negotiations leading up to Governor

27   Schwarzenegger's execution of a compact with Big Lagoon on September 9, 2005 to operate a

28   Gaming Facility in Barstow.  Second, the Tribe alleges bad faith with respect to the events leading

     up to the termination of the Barstow Compact in September 2007 when the California legislature

**United States District Court**
For the Northern District of California

1   failed to ratify it pursuant to the provisions of article IV, section 19(f) of the California Constitution.

2   The third category of allegations relates to the negotiations for a compact that commenced in

3   September 2007 as a result of Big Lagoon's request to Governor Schwarzenegger.

4          The Tribe alleges a pattern of "surface bargaining" over the course of the past fifteen years –

5   negotiating without any real intent to reach an agreement, despite the written record of negotiations

6   – and argues that the documents it seeks are likely to lead to admissible evidence needed to prove its

7   claims.

8          **B.      The Document Requests in Dispute**

9          The Tribe has propounded nineteen document requests that it argues will lead to admissible

10  evidence related to its claim that the State has engaged in "surface bargaining" with the Tribe for the

11  past 15 years, leading up to the most recent negotiations and present lawsuit.  Seven of those

12  requests were the subject of the State's Motion for Protective Order.  *See* Court's Order dated March

13  19, 2010, Docket No. 64.  Subsequent to this Court's Order denying Defendant's Motion for

14  Protective Order, the parties engaged in negotiations in order to narrow the Plaintiff's document

15  requests.  After an in-person discovery conference, the parties reached certain tentative agreements

16  regarding the Tribe's seven document requests.  The Tribe agreed to narrow its requests and the

17  State agreed to produce documents responsive to the narrowed requests.  Among the requests to

18  which the State has agreed to conduct a limited search are the following:

19         "Any and all documents discussing, analyzing, or regarding any and all concessions that the
           State would be willing to offer to Big Lagoon Rancheria in exchange for the request that the
20         Tribe share a portion of its gaming revenue with the State."

21         "Any and all documents discussing, analyzing, or regarding any and all concessions that the
           State would be willing to offer to Big Lagoon Rancheria in exchange for the request that the
22         Tribe make efforts to limit the environmental impact of the proposed casino development."

23         "Any and all documents discussing, analyzing, or regarding the State's position with regard
           to whether or not it would negotiate a gaming compact that would allow Big Lagoon
24         Rancheria to operate a casino on its original rancheria."

25  Plaintiff's Opp. at 2-3.  The State confirms in its reply brief that it has agreed to produce documents

26  responsive to some of Plaintiff's requests, and has agreed to do so by June 16, 2010.  *See* State's

27  Reply at 7 ("Following an in-person meeting on June 3, 2010, the State has agreed to attempt to

28  provide additional information by June 16, 2010.").  At the hearing on the Motion, counsel for the

State clarified that the State had agreed to search for documents responsive to the narrowed requests,

**United States District Court**

For the Northern District of California

1 and does not now agree to produce them in light of a recent Ninth Circuit opinion, *Rincon Band of*

2 *Luiseno Indians v. Schwarzenegger*, 602 F.3d 1019 (9th Cir. 2010), which will be discussed in

3 greater detail below.

4      **C.**     **The Defendant's Motion**

5      The State seeks reconsideration of this Court's March 19, 2010 Order Denying the State's

6 Motion for Protective Order on the basis of a recent Ninth Circuit opinion that was decided

7 subsequent to this Court's decision.  In *Rincon Band of Luiseno Indians v. Schwarzenegger*, 602

8 F.3d 1019 (9th Cir. 2010), the Ninth Circuit held that "good faith should be evaluated objectively

9 based on the record of negotiations, and that a state's subjective belief in the legality of its requests

10 is not sufficient to rebut the inference of bad faith created by objectively improper demands." *Id.* at

11 1041.  The State argues, citing *Rincon*, that this Court's previous ruling must be reconsidered and

12 the Motion for Protective Order granted.

13 **III.**     **DISCUSSION**

14      **A.**     **Legal Standard – Discovery**

15      Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain

16 discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."

17 Rule 26(b)(1) further provides that "[r]elevant information need not be admissible at trial if the

18 discovery appears reasonably calculated to lead to the discovery of admissible evidence."

19      Fed.R.Civ.P. 26(c) provides that a "court may, for good cause, issue an order to protect a

20 party or person from annoyance, embarrassment, oppression, or undue burden or expense."  In light

21 of the broad discovery rules, protective orders provide a safeguard for parties and other persons.

22 *United States v. Columbia Broadcasting Sys., Inc.*, 666 F.2d 364, 368-369 (9th Cir. 1982).  The

23 party or person seeking the protective order bears the burden of making a specific showing that harm

24 or prejudice will result if the order is not entered.  *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d

25 1122, 1130 (9th Cir. 2003) (citations omitted).

26      **B.**     **Legal Standard – Reconsideration**

27      Reconsideration of an interlocutory order is appropriate if the moving party can demonstrate:

28  "(1) [t]hat at the time of the motion for leave, a material difference in fact or law exists from that

which was presented to the Court before entry of the interlocutory order for which reconsideration is

4

United States District Court

For the Northern District of California

1  sought. The party also must show that in the exercise of reasonable diligence the party applying for

2  reconsideration did not know such fact or law at the time of the interlocutory order; or (2)[ t]he

3  emergence of new material facts or a change of law occurring after the time of such order; or (3) [a]

4  manifest failure by the Court to consider material facts or dispositive legal arguments which were

5  presented to the Court before such interlocutory order." *See* Civil Local Rule 7-9(b).

6         **C.**     **Legal Standard – Good Faith Under the IGRA**

7        The parties are in agreement that the IGRA requires the State to negotiate with tribes in good

8  faith with regard to class III gaming compacts.  Because the standard is undefined, however, the

9  parties disagree on the question of what evidence may be used to prove compliance with the good

10  faith requirement.  The core of the State's argument in its original motion for protective order was

11  that despite the permissive federal discovery standard discussed above, discovery under the IGRA

12  should be limited to the offers, counter-offers, and documents supporting those proposals, and any

13  information of which the court may take judicial notice (along with evidence on affirmative

14  defenses).  The State argued that, aside from judicially-noticeable information and its affirmative

15  defenses, only the documents they have already produced – what one court called the "transcript of

16  the negotiations" – are relevant to good faith.  Other documents pertaining to the negotiations and

17  the Compact, such as communications within the State or between the State and someone other than

18  the Tribe, are of no relevance to good faith.[2]

19        The State argues that an intervening decision of the Ninth Circuit, *Rincon, supra*, has

20  affirmatively decided this question and has defined the scope of permissible discovery in an IGRA

21  case.  There, the State argued that it had negotiated with the Rincon tribe in good faith because it

22  "genuinely believed its revenue sharing demands were authorized by *Coyote Valley II*, approved by

23  the Department of the Interior, and fair because other tribes had accepted them." *Id.* at 1041.  The

24  Ninth Circuit rejected the State's argument, finding that although the IGRA is silent with respect to

25  whether the good faith determination should be evaluated objectively or subjectively, the factors

26  outlined in §2710(d)(7)(iii) "lend themselves to objective analysis and make no mention of

27

28        [2]Although the State objects that judicially-noticeable information may be of relevance, it specifically eshews the position that this includes evidence of the type sought by the discovery here: evidence of internal and external communications by a party – other than the negotiating positions themselves – which might show bad faith.

**United States District Court**
For the Northern District of California

1 unreasonable beliefs." *Id.* The court also explained that the "structure and content of § 2710(d)

2 make clear that the function of the good faith requirement and judicial remedy is to permit the tribe

3 to process gaming arrangements on an expedited basis, not to embroil the parties in litigation over

4 their subjective motivations." *Id.* The court held that the good faith determination should therefore

5 be evaluated "objectively based on the record of negotiations, and that a state's subjective belief in

6 the legality of its requests is not sufficient to rebut the inference of bad faith created by objectively

7 improper demands." *Id.* The court was not presented with the question of the scope of discovery,

8 but noted that "the State has taken the position that good faith should be proved based on the

9 objective course of negotiations." *Id.* at 1041, n.25. The court pointed out that "[t]he State cannot

10 have it both ways. If the State wants to avoid discovery and limit review of good faith to the official

11 record of negotiations, the State cannot defend itself on the good faith question by claiming its

12 objectively improper demands were made with an innocent intent." *Id.*

13    Here, the Tribe originally sought discovery of documents that "would show, or lead to the

14 discovery of admissible evidence regarding, the underlying state of mind and motives of the State

15 during this attenuated history of negotiations." *See* "Plaintiff Big Lagoon Rancheria's Opposition to

16 Defendant State of California's Motion for a Protective Order Against Plaintiff's Request for

17 Production of Documents," Docket No. 37 at 3-4.

18    **D.    Analysis**

19    The Court finds that although the question of whether a trial court may consider evidence

20 other than that contained in the proposals and counter-proposals of the parties (and judicially-

21 noticeable information) in determining "good faith" has not been resolved by a binding court

22 decision, the *Rincon* opinion nevertheless provides guidance with respect to a crucial issue in this

23 case – whether evidence bearing on the subjective motivation of the State is relevant to the good

24 faith determination. Because this finding impacts this Court's March 19, 2010 Order, the Court

25 concludes that its prior order must be reconsidered to the extent that it allowed discovery of

26 documents aimed at uncovering the State's subjective beliefs. *See e.g.,* Docket No. 64 (" . . the good

27 faith determination is one that takes into account all of the facts and circumstances, not just the bare

28 "record" of negotiations between the parties."). However, the Court is not convinced that the Ninth

Circuit's decision restricts discovery as much as now advanced by the State.

United States District Court

For the Northern District of California

1    *Rincon* does not preclude the District Court in this case from considering *any* evidence

2    outside of the proposals and counter-proposals in addressing the good faith issue.  The Court in

3    *Rincon* used the term "record of negotiations" but did not define the term or the proper scope of

4    discovery under IGRA.  *Rincon* holds that the evidence considered must allow the court to make an

5    "objective" determination of good faith and that it is not appropriate for the State to rely upon its

6    own stated "good faith" belief that it was acting in compliance with the law during the negotiations.

7    The legislative history, on the other hand, supports the conclusion that discovery beyond the bare

8    bargaining positions is relevant to this determination.  As the Ninth Circuit noted in reference to the

9    legislative history regarding the statutory requirement of good faith negotiation:  "The Committee

10   notes that *it is States not tribes that have crucial information in their possession* that will prove or

11   disprove tribal allegations of failure to act in good faith."  Opp. at 9 (citing *Coyote Valley II*, 331

12   F.3d at 1108) (citing S. Rep. No. 100-446 at 14 (1988) (emphasis supplied)).  That "crucial

13   information" cannot be limited to the proposals and counter-proposals of each side: presumably both

14   the Tribe and the State have copies of such documents.  Congress anticipated that there would be

15   other information, bearing on good faith, that would only be available from the State.  Therefore, the

16   Legislature envisioned that the good faith determination will necessarily include matters beyond the

17   bargaining positions.

18          The language of the *Rincon* decision makes one point clear:  the subjective motivations of

19   the parties are not relevant to the good faith determination.  *Rincon, supra*., 602 F.3d at 1041 (the

20   intent of Congress was "not to embroil the parties in litigation over their subjective motivations").

21   Evidence, therefore, that bears only on subjective intent is not discoverable.  For example, in

22   searching for evidence based on this Court's original ruling, the Tribe sought evidence

23   demonstrating this subjective intent – perhaps such as admissions in documents and correspondence

24   that the negotiators never intended to reach or ratify an agreement.  Such evidence is not relevant.

25          However, some documents in the State's possession – beyond the bargaining positions of the

26   parties – are relevant to an objective evaluation of the good faith of the State's bargaining positions.

27   For example, there may be evidence in the possession of the State that bears on the reasonableness

28   of its bargaining positions.  This evidence may consist of, for example, evaluations of various

possible proposals or other documents that bear on the reasonableness of the State's offers.  Such

1  documents are not aimed at revealing the subjective intent of the parties, which would be precluded

2  by the Ninth Circuit's holding in *Rincon*.  Rather, the documents would allow the District Court to

3  objectively assess the good faith of the State's positions throughout the history of the negotiations.

4                    **IV.     CONCLUSION**

5          For the foregoing reasons, the State's Motion for Reconsideration is GRANTED IN PART.

6  The parties are ORDERED to meet and confer to determine which documents sought by the Tribe

7  are discoverable under this Order.  Any objections to this ruling shall be filed and served within ten

8  (10) calendar days of the date of this written order.

9  IT IS SO ORDERED.

10  Dated: July 12, 2010

11  _____
    JOSEPH C. SPERO
12  United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

8